# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL CHERRY, Derivatively on Behalf of Nominal Defendant DESKTOP METAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>RIC FULOP, JAMES HALEY, ALI EL-SIBLANI, BILAL ZUBERI, DAYNA GRAYSON, JAMES EISENSTEIN, JEFF IMMELT, LEO HINDERY, JR., SCOTT DUSSAULT, STEPHEN NIGRO, STEVE PAPA, and WEN HSIEH,<br><br>Defendants,<br><br>and<br><br>DESKTOP METAL, INC.,<br><br>Nominal Defendant. | Case No. |

## VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Plaintiff Michael Cherry ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, Desktop Metal, Inc. ("Desktop Metal" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties and violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Desktop Metal with the U.S. Securities and Exchange

1

Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## I.     NATURE AND SUMMARY OF THE ACTION

1. Desktop Metal offers additive manufacturing technologies focused on the production of end use parts. Its platforms include: Production System, a manufacturing platform using the Company's proprietary Single Pass Jetting technology enabling production quantities of up to millions of parts per year; Shop System, an affordable turnkey binding jetting platform to bring metal 3D printing to machine and job shops; Studio System, an office-friendly metal 3D printing system; and Fiber, a desktop 3D printer using the Company's proprietary Micro Automated Fiber Placement.

2. On February 16, 2021, the Company acquired EnvisionTEC, Inc. and certain of its affiliates (collectively, "EnvisionTEC"), a provider of volume production photopolymer 3D printing solutions for end use parts.

3. On November 8, 2021, after the market closed, Desktop Metal disclosed that it was conducting an internal investigation into certain matters, including "manufacturing and product compliance practices and procedures with respect to a subset of its photopolymer equipment and materials at its EnvisionTec US LLC facility." Also on November 8, 2021, the Company also stated that defendant El-Siblani had resigned as Chief Executive Officer of EnvisionTec US LLC and as a director of Desktop Metal. On this news, the Company's stock fell $0.39, or 4%, to close at $8.81 per share on November 9, 2021.

4. Then, on November 15, 2021, after the market closed, the Company stated that it would notify the U.S. Food and Drug Administration ("FDA") of "compliance issues with certain shipments of EnvisionTEC's Flexcera dental resins and its PCA4000 curing box." On this news,

the Company's stock fell $1.19, or 15%, to close at $6.83 per share on November 16, 2021, on unusually heavy trading volume.

5. These revelations precipitated the filing of a securities class action in the U.S. District Court for the District of Massachusetts against Desktop Metal and certain of the defendants named herein, captioned *Luongo v. Desktop Metal, Inc., et al.*, Case No. 21-cv-12099 (the "Securities Class Action").

6. Plaintiff did not make a litigation demand prior to filing this action because such action would have been futile based upon the composition of the Board and the actions taken by the Board, as alleged herein.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: violations of Section 14(a) of the Exchange Act. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because the Company is incorporated in Delaware and is thus a citizen of this District. Additionally, the Company's bylaws contain a forum selection clause requiring shareholder derivative actions like this one to be filed in this District.

## III. PARTIES

**Plaintiff**

9. Plaintiff Michael Cherry purchased shares of Desktop Metal stock in December 2020 and has continuously owned his Desktop Metal stock since that date. He currently owns 2,935 shares.

**Nominal Defendant**

10.     Nominal Defendant Desktop Metal is a Delaware corporation with its principal executive offices located at 63 3rd Avenue, Burlington, Massachusetts 01803. The Company's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "DM."

**Defendants**

11.     Defendant Ric Fulop ("Fulop") has served as Chief Executive Officer ("CEO") and a director of the Company since 2015. He is named as a defendant in the Securities Class Action.

12.     Defendant James Haley ("Haley") has served as the Company's Chief Financial Officer ("CFO") since February 2021. He is named as a defendant in the Securities Class Action.

13.     Defendant Ali El-Siblani ("El-Siblani") served as a director of the Company from February 2021 to November 2021. He was CEO of EnvisionTec US LLC from 2002 to November 2021. He is named as a defendant in the Securities Class Action.

14.     Defendant Bilal Zuberi ("Zuberi") has served as a director of the Company since April 2016.

15.     Defendant Dayna Grayson ("Grayson") has served as a director of the Company since October 2015.

16.     Defendant James Eisenstein ("Eisenstein") has served as a director of the Company since July 2021.

17.     Defendant Jeff Immelt ("Immelt") has served as a director of the Company since July 2018.

18.     Defendant Leo Hindery, Jr. ("Hindery") has served as a director of the Company since

19.     Defendant Scott Dussault ("Dussault") has served as a director of the Company since December 2020.

4

20. Defendant Stephen Nigro ("Nigro") has served as a director of the Company since December 2020.

21. Defendant Steve Papa ("Papa") has served as a director of the Company since June 2016.

22. Defendant Wen Hsieh ("Hsieh") has served as a director of the Company since April 2016.

23. Defendants Fulop, Haley, El-Siblani, Zuberi, Grayson, Eisenstein, Immelt, Hindery, Dussault, Nigro, Papa and Hsieh are sometimes referred to hereinafter as the "Individual Defendants."

## IV. DUTIES OF THE INDIVIDUAL DEFENDANTS

24. By reason of their positions as officers, directors, and/or fiduciaries of Desktop Metal and because of their ability to control the business and corporate affairs of Desktop Metal, at all relevant times, the Individual Defendants owed Desktop Metal and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage Desktop Metal in a fair, just, honest, and equitable manner. The Individual Defendants were required to act in furtherance of the best interests of Desktop Metal and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Desktop Metal and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

25. The Individual Defendants, because of their positions of control and authority as directors and/or officers of Desktop Metal, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive,

managerial, and directorial positions with Desktop Metal, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

26. To discharge their duties, the officers and directors of Desktop Metal were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Desktop Metal were required to, among other things:

(a) Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b) Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c) Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

(d) When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## V. SUBSTANTIVE ALLEGATIONS

### A. Background

27. Desktop Metal offers additive manufacturing technologies focused on the production of end use parts. Its platforms include: Production System, a manufacturing platform using the Company's proprietary Single Pass Jetting technology enabling production quantities of up to millions of parts per year; Shop System, an affordable turnkey binding jetting platform to bring metal 3D printing to machine and job shops; Studio System, an office-friendly metal 3D printing system; and Fiber, a desktop 3D printer using the Company's proprietary Micro Automated Fiber Placement.

28. On February 16, 2021, the Company acquired EnvisionTEC, Inc. and certain of its affiliates (collectively, "EnvisionTEC"), a provider of volume production photopolymer 3D printing solutions for end use parts.

### B. The Individual Defendants Cause the Company to Issue Materially Misleading Statements

29. On March 15, 2021, the Individual Defendants caused Desktop Metal to file its annual report on Form 10-K for the period ended December 31, 2020 (the "2020 10-K"). Therein, the Company stated, in relevant part:

> ***We may experience difficulties in integrating the operations of EnvisionTEC into our business and in realizing the expected benefits of the EnvisionTEC acquisition.***
>
> In February 2021, we acquired EnvisionTEC, Inc., or EnvisionTEC, and certain of its affiliates. Additional information about our acquisition of EnvisionTEC, which we refer to as the EnvisionTEC Acquisition, are set forth in "Note 21. Subsequent Events" to our consolidated financial statements in this Annual Report on Form 10-K. The success of the EnvisionTEC Acquisition will depend in part on our ability to realize the anticipated business opportunities from combining the operations of EnvisionTEC with our business in an efficient and effective manner. The integration process could take longer than anticipated and could result in the loss of key employees, the disruption of each company's ongoing businesses, tax costs or inefficiencies, or inconsistencies in standards, controls, information technology systems, procedures and policies, any of which could adversely affect our ability to maintain relationships with customers, employees or other third parties, or our ability to achieve the anticipated benefits of the EnvisionTEC Acquisition, and could harm our financial performance. If we are unable to successfully or timely integrate the operations of EnvisionTEC with our business, we may incur unanticipated liabilities and be unable to realize the revenue growth, synergies and other anticipated benefits resulting from the EnvisionTEC Acquisition, and our business, results of operations and financial condition could be materially and adversely affected.
>
> We have incurred significant costs in connection with the EnvisionTEC Acquisition. The substantial majority of these costs are non-recurring expenses related to the EnvisionTEC Acquisition. These non-recurring costs and expenses are reflected in the unaudited pro forma condensed combined financial information included in this Annual Report on Form 10-K. We may incur additional costs in the integration of EnvisionTEC's business, and may not achieve cost synergies and other benefits sufficient to offset the incremental costs of the EnvisionTEC Acquisition.

30. On May 17, 2021, the Individual Defendants caused Desktop Metal to file its quarterly report on Form 10-Q for the period ended March 31, 2021 (the "1Q21 10-Q"). Therein, the Company stated: "EnvisionTEC's results are included in the Company's consolidated results for the period from February 16, 2021 to March 31, 2021. For this period, EnvisionTEC's net revenues were approximately $5.4 million and net loss was approximately $1.8 million." It also stated:

> Total revenue for the three months ended March 31, 2021 and 2020 was $11.3 million and $3.4 million, respectively, an increase of $7.9 million, or 234%. The increase in total revenue was attributable to an increase in revenue from both products and services.
>
> We sold more products during the three months ended March 31, 2021 as compared to three months ended March 31, 2020, leading to an approximately 283% increase in product revenue. This was primarily due to product revenue from EnvisionTEC following the close of this acquisition. Additionally, we shipped more units during the first quarter of 2021 compared to the first quarter of 2020.

31. Moreover, the 1Q21 10-Q stated that there was a material weakness in the Company's internal control over financial reporting and that its "disclosure controls and procedures are not effective . . . ." Specifically, the report stated the following regarding the Company's controls and procedures:[1]

> **Background and Remediation of Material Weakness**
>
> In connection with our evaluation of disclosure controls and procedures covering our consolidated financial statements as of December 31, 2020, we identified material weaknesses in our internal control over financial reporting. We have concluded that material weaknesses exist in our evaluation of disclosure controls and procedures, including internal control over financial reporting, as we do not have the necessary business processes, personnel and related internal controls to operate in a manner to satisfy the accounting and financial reporting requirements of a public company. ***These material weaknesses primarily manifested in the improper segregation of duties relating to the recording of journal entries and the reconciliation of key accounts, as well as the analysis of certain transactions and accounts, and the safeguarding of assets. We identified an additional***

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

> *material weakness related to the design and operating effectiveness of controls over our accounting for significant and complex accounting matters.*
>
> We are focused on designing and implementing effective internal controls measures to improve our evaluation of disclosure controls and procedures, including internal control over financial reporting, and remediate the material weaknesses. In order to remediate these material weaknesses, we have taken and plan to take the following actions:
>
> - the hiring and continued hiring of additional accounting, finance and legal resources with public company experience; and
>
> - implementation of additional review controls and processes requiring timely account reconciliation and analyses of certain transactions and accounts.
>
> These actions and planned actions are subject to ongoing evaluation by management and will require testing and validation of design and operating effectiveness of internal controls over financial reporting over future periods. We are committed to the continuous improvement of our internal control over financial reporting and will continue to review the internal controls over financial reporting.
>
> \* \* \*
>
> **Changes in Internal Control Over Financial Reporting**
>
> On February 16, 2021, we completed the acquisition of EnvisionTEC. We are in the process of integrating EnvisionTEC into our system of internal control over financial reporting. Except for the material weaknesses noted above and the acquisition of EnvisionTEC, there were no changes to our internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act) that occurred during the quarter ended March 31, 2021 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

32.     On August 11, 2021, the Individual Defendants caused Desktop Metal to file its quarterly report on Form 10-Q for the period ended June 30, 2021 (the "2Q21 10-Q"). Therein, the Company stated: "EnvisionTEC's results are included in the Company's consolidated results for the period from February 16, 2021 to June 30, 2021. For this period, EnvisionTEC's net revenues were approximately $15.7 million and net loss was approximately $4.8 million."

33. Moreover, the 2Q21 10-Q stated that there was a material weakness in the Company's internal control over financial reporting and that its "disclosure controls and procedures are not effective . . . ." Specifically, the report stated the following regarding the Company's controls and procedures:

> **Background and Remediation of Material Weakness**
>
> In connection with our evaluation of disclosure controls and procedures covering our consolidated financial statements as of December 31, 2020, we identified material weaknesses in our internal control over financial reporting. We have concluded that material weaknesses exist in our evaluation of disclosure controls and procedures, including internal control over financial reporting, as we do not have the necessary business processes, personnel and related internal controls to operate in a manner to satisfy the accounting and financial reporting requirements of a public company. *These material weaknesses primarily manifested in the improper segregation of duties relating to the recording of journal entries and the reconciliation of key accounts, as well as the analysis of certain transactions and accounts, and the safeguarding of assets. We identified an additional material weakness related to the design and operating effectiveness of controls over our accounting for significant and complex accounting matters.*
>
> We are focused on designing and implementing effective internal controls measures to improve our evaluation of disclosure controls and procedures, including internal control over financial reporting, and remediate the material weaknesses. In order to remediate these material weaknesses, we have taken and plan to take the following actions:
>
> - the hiring and continued hiring of additional accounting, finance and legal resources with public company experience; and
>
> - implementation of additional review controls and processes requiring timely account reconciliation and analyses of certain transactions and accounts.
>
> These actions and planned actions are subject to ongoing evaluation by management and will require testing and validation of design and operating effectiveness of internal controls over financial reporting over future periods. We are committed to the continuous improvement of our internal control over financial reporting and will continue to review the internal controls over financial reporting.

34. The above statements in ¶¶ 29-33 were materially misleading because they failed to disclose: (1) that there were deficiencies in EnvisionTEC's manufacturing and product

compliance practices and procedures; (2) that the foregoing deficiencies presented a material risk to the commercialization of EnvisionTEC's products; and (3) that as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### C. The Truth Fully Emerges

35. On November 8, 2021, after the market closed, Desktop Metal disclosed that it was conducting an internal investigation into certain matters, including "manufacturing and product compliance practices and procedures with respect to a subset of its photopolymer equipment and materials at its EnvisionTec US LLC facility." In a Form 8-K filed with the SEC, the Company stated:

> On November 4, 2021, the Audit Committee of the Board of Directors of Desktop Metal, Inc. (the "Company") engaged a third party to conduct an independent internal investigation as a result of a whistleblower complaint relating to, among other matters, manufacturing and product compliance practices and procedures with respect to a subset of its photopolymer equipment and materials at its EnvisionTec US LLC facility in Dearborn, Michigan. While the investigation remains on-going, the Company has taken initial actions, including implementing changes in the management of and procedures associated with manufacturing the applicable products. Based on the investigation to date, the Company does not believe the matters involved will have a material impact on the Company, its financial statements or its business.

36. Also on November 8, 2021, the Company also stated that defendant El-Siblani had resigned as Chief Executive Officer of EnvisionTec US LLC and as a director of Desktop Metal.

37. On this news, the Company's stock fell $0.39, or 4%, to close at $8.81 per share on November 9, 2021.

38. Then, on November 15, 2021, after the market closed, the Company stated that it would notify the U.S. Food and Drug Administration ("FDA") of "compliance issues with certain shipments of EnvisionTEC's Flexcera dental resins and its PCA4000 curing box." Specifically, in its Form 10-Q for the period ended September 30, 2021, the Company stated:

> On November 4, 2021, the Audit Committee of the Board of Directors engaged a third party to conduct an independent internal investigation as a result of a whistleblower complaint relating to, among other matters, manufacturing and product compliance practices and procedures with respect to a subset of its photopolymer equipment and materials at its EnvisionTec US LLC facility in Dearborn, Michigan. While the investigation remains on-going, the Company has taken initial actions, including implementing changes in the management of and procedures associated with manufacturing the applicable products. Based on the investigation to date, the Company does not believe the matters involved will have a material impact on the Company, its financial statements or its business.
>
> On November 5, 2021, Ali El Siblani notified the Company of his intent to resign as a member of the Company's Board of Directors and as an employee of the Company in his role as Chief Executive Officer of EnvisionTec US LLC. The decision of Mr. Siblani was not the result of any disagreement relating to the Company's operations, policies or practices.
>
> As of November 12, 2021, based on compliance issues with certain shipments of EnvisionTEC's Flexcera dental resins and its PCA4000 curing box, the Company has determined that it will notify the FDA and consult with them on the appropriate voluntary market action with respect to these products. The Company does not expect the costs of any such market action to have a material impact on its financial statements.

39. On this news, the Company's stock fell $1.19, or 15%, to close at $6.83 per share on November 16, 2021, on unusually heavy trading volume.

### D. The Individual Defendants Caused Desktop Metal to Issue a Materially Misleading Proxy Statement

40. On June 17, 2021, defendants Fulop, El-Siblani, Zuberi, Grayson, Immelt, Hindery, Dussault, Nigro, Papa and Hsieh issued a definitive proxy statement soliciting stockholder votes in advance of the Company's annual meeting to be held July 27, 2021. In the proxy statement, these eleven directors solicited stockholder votes in favor of two management proposals, including the election of Grayson, Papa, and Zuberi to new terms as directors.

41. The proxy statement disclosed that the Board had determined that defendants Fulop, El-Siblani, and Nigro were not independent.

42. It stated that the Audit Committee was responsible for risks with respect to financial reporting. Specifically, the proxy statement stated, in relevant part:

> Our Audit Committee is responsible for, among other things:
>
> appointing, approving the compensation of, and assessing the independence of our independent registered public accounting firm;
>
> overseeing the work of our independent registered public accounting firm, including through the receipt and consideration of reports from such firm;
>
> reviewing and discussing with management and the independent registered public accounting firm our annual and quarterly financial statements and related disclosures;
>
> considering and discussing with management our code of business conduct and ethics;
>
> discussing our risk assessment and risk management policies;
>
> establishing policies regarding hiring employees from the independent registered public accounting firm and procedures for the receipt and retention of accounting related complaints and concerns;
>
> meeting independently with our internal auditing staff, if any, independent registered public accounting firm and management;
>
> reviewing and approving or ratifying any related person transactions; and
>
> preparing the Audit Committee report required by the SEC rules (which is included on page 13 of this proxy statement).

43. The proxy statement was materially misleading because it misrepresented the Board's activities with respect to financial reporting while soliciting votes to reelect and compensate directors who were breaching their fiduciary duties. A reasonable shareholder would have found the truth to be material when deciding to vote for or against these proposals.

44. On July 29, 2021, Desktop Metal filed a Form 8-K with the SEC disclosing the results from the votes on the proposals contained in the proxy statement. In particular, Grayson, Papa, and Zuberi were reelected to new terms as directors. The reelection of these three directors based on the misleading statements contained in the proxy statement and other public filings was

a fundamental link in these directors' continued breaches of fiduciary duties and their continued enrichment at the expense of the Company's unaffiliated stockholders.

## VI. DAMAGES TO THE COMPANY

45. As a direct and proximate result of the Individual Defendants' conduct, Desktop Metal has been seriously harmed and will continue to be. Such harm includes, but is not limited to:

   a) Any funds paid to settle the Securities Class Action; and

   b) Costs incurred from compensation and benefits paid to the defendants who have breached their duties to Desktop Metal.

46. In addition, Desktop Metal's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired. The Company still has not fully admitted the nature of its false statements and the true condition of its business. The credibility and motives of management are now in serious doubt.

47. The actions complained of herein have irreparably damaged Desktop Metal's corporate image and goodwill. For at least the foreseeable future, Desktop Metal will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Desktop Metal's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII. DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

48. Plaintiff brings this action derivatively in the right and for the benefit of Desktop Metal to redress injuries suffered, and to be suffered, by Desktop Metal as a direct result of the wrongdoing alleged herein. Desktop Metal is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

49.     Plaintiff will adequately and fairly represent the interests of Desktop Metal in enforcing and prosecuting its rights.

50.     Plaintiff has continuously been a shareholder of Desktop Metal at times relevant to the wrongdoing complained of and is a current Desktop Metal shareholder.

51.     When this action was filed, Desktop Metal's Board of Directors consisted of defendants Fulop, Zuberi, Grayson, Eisenstein, Immelt, Hindery, Dussault, Nigro, Papa, and Hsieh. Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

52.     Zuberi, Immelt, and Dussault also served as members of the Audit Committee at relevant times. As such they are responsible for the integrity of Desktop Metal's financial statements. In their capacities as Audit Committee members, Zuberi, Immelt, and Dussault reviewed and approved the materially misleading statements and allowed them to be disseminated in Desktop Metal's SEC filings and other disclosures. Thus, Zuberi, Immelt, and Dussault breached their fiduciary duties and are not disinterested, and demand is excused as to them.

53.     Fulop is the Company's CEO and therefore is not independent under NYSE listing rules. As an employee, Fulop derives substantially all of his income from his employment with Desktop Metal, thus could not disinterestedly consider a demand for action that might require him to sue the directors that control his continued employment and/or his fellow members of management with whom he works on a day-to-day basis. He is also named as a defendant in the Securities Class Action. As a result, demand is futile as to him.

54.     Hindery also lacks independence because he selected Desktop Metal to merge with Trine Acquisition Corp., a special purpose acquisition company led by him.

55. Fulop, El-Siblani, Zuberi, Grayson, Immelt, Hindery, Dussault, Nigro, Papa and Hsieh could not disinterestedly consider a demand because they issued the 2021 proxy statement misrepresenting the Audit Committee's activities with respect to financial reporting. As a result of the misleading proxy statement, three directors were reelected to new terms, including defendant Zuberi who serves on the Audit Committee.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

56. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

57. The Individual Defendants each owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Desktop Metal's business and affairs, particularly with respect to issues as fundamental as public disclosures.

58. The conduct by the Individual Defendants set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Desktop Metal.

59. In breach of their fiduciary duties owed to Desktop Metal, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

60. In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report Company's overall prospects.

61. As a direct and proximate result of the breaches of their fiduciary obligations by the Individual Defendants, Desktop Metal has sustained and continues to sustain significant

damages, including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets. As a result of the misconduct alleged herein, defendants are liable to the Company.

## COUNT II

**(Against Defendants Fulop, El-Siblani, Zuberi, Grayson, Immelt, Hindery, Dussault, Nigro, Papa and Hsieh For Violations of Section 14(a) of the Exchange Act)**

62. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

63. Rule 14a-9, promulgated pursuant to §14(a) of the Securities Exchange Act of 1934, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9. Specifically, the Company's proxy statement filed on June 17, 2021 violated §14(a) and Rule 14a-9 because solicited stockholder approval for the Business Combination while failing to disclose material facts about Desktop Metal's business.

64. In the exercise of reasonable care, defendants should have known that the statements contained in the proxy statement were materially false and misleading.

65. The misrepresentations and omissions in the proxy statement were material to Company shareholders in voting on the proxy statement. The Proxy Statement solicited shareholder votes for: (i) director nominees; and (ii) ratification of independent accounting firm. The proxy statement was an essential link in the accomplishment of the continuation of defendants' continued violation of their fiduciary duties.

66. The Company was damaged as a result of the defendants' material misrepresentations and omissions in the proxy statement..

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff, on behalf of Desktop Metal, demands judgment as follows:

A.  Declaring that plaintiff may maintain this action on behalf of Desktop Metal and that plaintiff is an adequate representative of the Company;

B.  Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C.  Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Desktop Metal;

D.  Directing Desktop Metal to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Desktop Metal and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.  a proposal to strengthen the Company's controls over financial reporting;

2.  a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

3.  a proposal to strengthen Desktop Metal's oversight of its disclosure procedures;

4.  a provision to control insider transactions; and

5.  a provision to permit the stockholders of Desktop Metal to nominate at least three candidates for election to the Board;

E. Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Desktop Metal has an effective remedy;

F. Awarding to Desktop Metal restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

G. Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury.

Dated: July 22, 2022

Of Counsel:

**GLANCY PRONGAY & MURRAY LLP**
Benjamin I. Sachs-Michaels
745 Fifth Avenue
New York, New York 10151
Telephone: (212) 935-7400
E-mail: bsachsmichaels@glancylaw.com

   -and-

Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: rprongay@glancylaw.com
         prajesh@glancylaw.com

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Plaintiff Michael Cherry*